(No. 23056.—

The People of the State of Illinois, Defendant in Error, *vs.* Edward Kerbeck, Plaintiff in Error.

*Opinion filed December 19, 1935—Rehearing denied Feb. 5, 1936.*

ALBERT R. FILITTI, (EDWARD M. KEATING, and ALBERT E. BUCCIERE, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, HENRY E. SEYFARTH, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Edward Kerbeck was convicted of the crime of robbery while armed with a gun. He was tried in the criminal court of Cook county without a jury. The court also found that on July 1, 1920, Kerbeck had been sentenced to the penitentiary for the crime of robbery as charged in the indictment and stipulated upon the trial. After motions for a new trial and in arrest of judgment were overruled he was sentenced to the penitentiary for life. The case is before us for review on a writ of error.

The complaining witness, Charles S. Cawthorne, was the assistant secretary and assistant treasurer of the American Steel and Wire Company and had been for about twenty years. The company maintained a warehouse at 2364 South Ashland avenue, in Chicago. This was a long, low building running parallel with Ashland avenue and adjacent to the sidewalk. In the middle of the building was an entrance or drive, with doors which permitted ingress

and egress by automobiles or trucks. Cawthorne testified that about 11:00 o'clock on the morning of August 31, 1934, he was in an automobile driven by one Brady and had with him a large manila envelope containing $2000 in United States currency intended for pay-roll purposes; that when the automobile arrived at the entrance to the warehouse he alighted and was in the act of opening the door, at the same time holding the envelope in his right hand; that someone grabbed the envelope containing the pay-roll and a gun was shoved into his stomach and he was told to keep his mouth shut; that the man also went through his pockets and took his pocket-book containing $85 of his (Cawthorne's) money; that there were two other men with the defendant, one of whom was back of the car and the other behind the witness, and that both of these men had guns. Cawthorne also testified that it was a clear day and the sun shining; that the man who took the money and had his gun against him was only about eighteen inches from him; that after the pay-roll and his pocket-book were taken he was struck across the mouth and knocked senseless; that he could not identify the other two men, but that the man who was in front of him and took the envelope was the man sitting in the court room (indicating the defendant); that he did not know what happened after he lost consciousness, and that the next time he saw the defendant was at a show-up of five or six men at the detective bureau on October 10, 1934.

No error of law is raised by the defendant, Kerbeck, but a reversal is asked on the ground that the identification of the accused was unsatisfactory, and that the trial court did not give sufficient credence to the testimony of the alibi witnesses. On cross-examination the witness Cawthorne stated that he did not know how the man who took his money was dressed but that he was looking at and observing his face and hands. He did notice that he wore a dark cap and had on a coat. He did not, however, recall

the color of the coat, nor whether the defendant wore a tie at the time. Cawthorne also stated that two photographs were later brought to him, one of which was a photograph of Kerbeck, but that he was unable to identify it as the picture of the defendant, although it appeared to be a good likeness; that he did not talk to any police officers previous to going to the cell room on the morning of October 10 but that he was called to the detective bureau; that he accompanied one Trecker, a police officer, to the cell room, where there were six or seven persons lined up, and at that time stated, "Kerbeck is the man." Cawthorne immediately corrected this statement, and added that he was positive he did not mention the defendant's name but said, "There is the man that robbed me."

It is insisted that the identification was of such a character as to raise a reasonable doubt as to the identity of the accused, first, because the complaining witness was unable to identify the picture of the defendant in the first instance, and second, the method of conducting the show-up was unsatisfactory. Cawthorne was a man evidently of good standing in the community and occupying a responsible position. He could have no purpose in identifying the defendant unless he felt convinced that the latter was the person who committed the crime. He testified that Kerbeck's face was within eighteen inches of his at the time he (Kerbeck) took the envelope and placed the gun against his body, and at such a moment it is only natural to presume that the details of Kerbeck's clothing would not impress themselves as indelibly on his mental vision as would the face of the man who had placed him in a position of imminent danger. His identification of Kerbeck was positive. In the case of *People* v. *Deal*, 357 Ill. 634, cited by the defendant, there seems to have been some doubt in the evidence as to whether the defendant in that case was alone when identified or one of a number. In the case before us the defendant admits that at the time

of the show-up he was one of six others. The defendant in his testimony stated that when they were called out for identification he was in the center of the line, and that he attempted to change his position but was ordered back to the place in the line of suspects which he originally occupied. Kerbeck also testified that Cawthorne went in with him when his measurements were taken, and he (Kerbeck) asked if this was a new procedure. Cawthorne denied that he was present at the time the defendant was being measured and photographed. Kerbeck's apparent knowledge of the proper procedure in regard to the line and the taking of measurements evidently did not re-act in his favor in the mind of the judge who heard the case. Kerbeck also stated that he did not wear a cap, and that on August 31, 1934, at the time the hold-up was alleged to have taken place, it was impossible for him to wear a cap, owing to the fact that his head was then like a foot-ball; that it was not bandaged but had lumps all over it and was badly swollen as a result of two beatings inflicted by the police about two weeks previously. The hold-up occurred in the daytime while the sun was shining and the face of the man who committed the act was within eighteen inches of the face of the complaining witness. The identification was positive and his testimony was credible. Under such circumstances the judgment will not be reversed merely because there was but one identifying witness. *People* v. *Gasior*, 359 Ill. 517; *People* v. *Fortino*, 356 id. 415.

The defendant produced certain witnesses known as alibi witnesses, who testified that on August 31 he was at his home at 2205 Ridgeway avenue during the entire morning. Mrs. Anna Kerbeck testified that she is the mother of the defendant, and that on August 31 he was at home around the hour of 11 :00 o'clock in the morning; that he was fixing curtain rods and polishing the floors, and that she remembered the day because the following Monday was Labor day. Sophie Hart testified that she was at the Ker-

beck home on August 31, about 10:30 o'clock in the morning; that the defendant was putting up curtain rods, and that she remembered the day because the following Monday was Labor day. Grace O'Gara testified that she was at the Kerbeck home and was there all morning; that the defendant was polishing the floors and fixing curtain rods, and that she remembered the date because Labor day was on the following Monday. The defendant testified that he was at home putting up curtain rods and polishing the floors.

The unanimity of the witnesses in fixing the occupation of the defendant as that of putting up curtain rods and polishing the floors, together with the fixing of the date by means of the following Monday being Labor day, is, to say the least, a remarkable coincidence. None of the witnesses observed, or at least did not testify to the fact which would appear to be outstanding, that on the day in question the defendant was possessed of a head (or he said it was) as large as a foot-ball by reason of injuries which he had sustained. The witness Sophie Hart, on cross-examination, testified that she had not talked to anyone before going on the stand. On re-direct examination, however, she stated that she had talked with Mrs. Kerbeck, the mother of the defendant, and she also stated on re-cross-examination that Mrs. Kerbeck had told her that she, the witness, was at the Kerbeck home when the defendant was there.

Alibi is an affirmative defense. Where the *corpus delicti* is proved, together with evidence tending to show the guilt of the defendant, and the defense of an alibi is interposed, the burden of establishing the alibi is upon the defendant, although upon the whole case his guilt must be proved beyond a reasonable doubt. (*People* v. *Wisz*, 360 Ill. 126; *People* v. *Gormach*, 302 id. 332.) This court will not reverse a conviction on the evidence, alone, unless it is able to say, from a careful consideration of the evi-

dence, that there is clearly a reasonable and well-founded doubt of the guilt of the accused. (*People* v. *Fortino, supra.*) This cause was heard by the court without a jury, and it had the advantage of seeing and hearing the witnesses and observing their demeanor, appearance and conduct while testifying. The determination of the weight accorded to their testimony is lodged in the trial court, and where the evidence is merely conflicting this court will not disturb the judgment. *People* v. *Bolger,* 359 Ill. 58.

The question before this court being one of fact, as shown by the record, and the issues having been decided by the trial court, based upon credible evidence, we see no reason for disturbing the judgment, and it is therefore affirmed.

*Judgment affirmed.*