(No. 27186.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HAROLD HENDRON, Plaintiff in Error.

*Opinion filed November 16, 1943.*

Alton B. Cofer, for plaintiff in error.

George F. Barrett, Attorney General, and Walter Brewer, Jr., State's Attorney, for the People.

Mr. Justice Wilson delivered the opinion of the court:

The defendant Harold Hendron, was indicted in the circuit court of Cumberland county for the crimes of burglary and larceny. A jury found him guilty of larceny and fixed the value of the property stolen at $55. Motions for a new trial and in arrest of judgment were made and overruled. Defendant was sentenced to the penitentiary for an indeterminate term of one to ten years. He prosecutes this writ of error.

For a period of approximately three months, beginning in September, 1938, and extending to about the middle of the following December, defendant, together with his wife and small child, occupied a house on a farm rented by Lester Weaver, now deceased. Prior to and in December, 1938, Weaver owned a cultivator which he had purchased for $110 in 1937. The cultivator was last seen by Weaver's son about the middle of December, 1938. On December 26, Leslie McElhaney attended an auction conducted by Alva. Rhodes and Robert Edgecomb at, or immediately beyond the western limits of Decatur, arriving between eleven o'clock in the morning and noon. McElhaney was the suc-.

cessful bidder on a cultivator, later identified as Weaver's property, and paid to the Macon County Sale Barn $35 for his purchase. From McElhaney's testimony it appears that a man who gave his name as Harold Hendron made representations to him with respect to the condition of the cultivator, and, to an inquiry about parts of the cultivator which were missing, Hendron answered that they could be procured at Strasburg or he would bring them to the next sale. McElhaney stated that he went to Strasburg but did not find the man whose name defendant gave him and, further, that the latter did not bring the missing parts to the next sale. According to McElhaney, the man weighed between 135 and 140 pounds, wore a little mustache, had two to four days' growth of beard, was wearing a pair of overalls, an overall waist and a machinist cap, and was, generally, unkempt. In early January, 1939, McElhaney learned from a radio broadcast that Weaver's cultivator had been stolen and repaired to Weaver's home. Weaver's description of the missing cultivator corresponded precisely with the description of the one McElhaney had purchased on December 26, 1938. Thereafter, on January 27, 1939, Weaver, his son, and Charles Malcolm went to McElhaney's farm and recovered the cultivator.

Rhodes stated that on the day of the sale he engaged in a conversation with defendant relative to the purchase of hogs and that the latter promised he would bring a "big bunch" the next Monday but did not do so. Rhodes testified further that, although several parts were missing from the cultivator, defendant desired to sell the implement at once in order to obtain his money on the day of the sale. Edgecomb, the auctioneer who sold the cultivator to McElhaney, identified defendant as the person who brought the cultivator to his place of business. The witness testified that he talked with defendant about the missing parts; that defendant expressed a desire to obtain his money on the day of the sale, irrespective of the bid, and

that he was given a check which he cashed an hour and a half later. According to Edgecomb's testimony, he talked with defendant about fifteen minutes, affording the witness ample opportunity to observe him. Rhodes's and Edgecomb's description of defendant's appearance are substantially the same as given by McElhaney. Ivan Weaver, son of Lester Weaver, Charles Malcolm and Ivan Stanberry, neighbors, described defendant's appearance in 1938. Each of these three witnesses testified that defendant wore a dark mustache, that his beard was usually two or three days old, and that he wore overalls and a jacket.

To sustain his defense of alibi, defendant testified in his own behalf and was supported by the testimony of his father, brother, wife, and Andrew D. Ankrom, a former employer. Defendant testified that he spent the entire day of December 26, 1938, at the home of his parents in Mattoon; that he did not absent himself from the house for more than an hour at a time and that he did not leave the city on the day named. He denied being present in Decatur on December 26 and declared he did not talk with McElhaney, Edgecomb or Rhodes on that day. Defendant testified further that he wore a suit on December 26 and asserted, on the other hand, that he did not wear overalls and a cap, adding that he had never worn a pair of overalls in his life. He said that he did not sell the cultivator to anyone on December 26. Defendant's father, his brother and his wife corroborated him to the extent he claimed to have been present at his father's home in Mattoon on December 26. The father testified defendant was not wearing overalls. Ankrom testified that, commencing at eleven o'clock in the morning of December 26, he visited with defendant about an hour at his father's house in Mattoon. The witness asserted that, although he saw defendant nearly every day, he had never seen him wearing overalls and "a hat only once or twice." Marion Arterburn, who testified that defendant had worked on his melon farm

about seven years during the melon seasons, said he had never been seen wearing overalls.

Defendant assails the sufficiency of the evidence, contending that his identity as the perpetrator of the crime was not established beyond a reasonable doubt and that his defense of alibi was conclusively proved. The testimony narrated discloses that a cultivator belonging to Weaver was stolen in December, 1938; that on December 26, this cultivator was sold at an auction sale to McElhaney, and that a man, positively identified by McElhaney, Rhodes and Edgecomb as defendant, brought the cultivator to the sale barn, made representations to Rhodes and Edgecomb with respect to its condition, promised to procure missing parts, received a check for the sale price and cashed the check. Recourse to defendant's testimony discloses that he did not deny the theft of the cultivator. There is substantial unanimity in the identification of defendant as the man who brought the cultivator to the sale on December 26, 1938. The jury undoubtedly deemed incredible defendant's testimony that he, long a farmer, had never owned or worn a pair of overalls. Again, it may well be that the jurors accorded weight to the absence of a denial of the offenses charged against him. Questions of the credibility of the witnesses and the weight of the evidence adduced are for the jury. (*People* v. *Bloom,* 370 Ill. 144; *People* v. *Kubish,* 357 Ill. 531.) Indeed, where a single witness gives testimony which is credible and the jury is convinced of the identity of the defendant and of his guilt beyond a reasonable doubt, the evidence may be sufficient to sustain a conviction. (*People* v. *Cullotta,* 376 Ill. 333; *People* v. *Gasior,* 359 Ill. 517; *People* v. *Fortino,* 356 Ill. 415.) In the present case, the identification was positive and the testimony credible.

It is true, as defendant insists, that direct evidence connecting him with the actual theft of the cultivator is wanting. Circumstantial evidence is, however, legal evidence,

and where strong and convincing in character, as here, it is sufficient upon which to base a conviction. (*People* v. *Betson*, 362 Ill. 502; *People* v. *Norris*, 362 Ill. 492; *People* v. *Martishuis*, 361 Ill. 178.) The inference of guilt in most cases of larceny must necessarily be drawn from other facts. Exclusive and unexplained possession of recently stolen property is *prima facie* evidence of the guilt of the possessor unless the possession is explained in such manner as at least to raise a reasonable doubt of guilt. (*People* v. *Kreisler*, 381 Ill. 453; *People* v. *Overbey*, 362 Ill. 488; *People* v. *Adamek*, 354 Ill. 551; *Flanagan* v. *People*, 214 Ill. 170.) The record is barren of an explanation of defendant's possession and control of the cultivator at the sale barn.

Alibi is an affirmative defense and where the *corpus delicti* is proved, together with evidence tending to show the guilt of an accused, the burden of establishing the alibi rests upon him, although upon the whole case his guilt must be proved beyond a reasonable doubt. (*People* v. *Weiss*, 367 Ill. 580; *People* v. *Kerbeck*, 362 Ill. 251; *People* v. *Gormach*, 302 Ill. 332.) The testimony of defendant and his corroborating witnesses, so far as it relates to an alibi, purports to cover only the day of the sale of the stolen cultivator. This court does not reverse a conviction on the evidence, alone, unless it is able to say, from a careful consideration of the evidence, that a reasonable and well-founded doubt of the guilt of the accused exists. (*People* v. *Kerbeck*, 362 Ill. 251; *People* v. *Fortino*, 356 Ill. 415; *People* v. *Mangano*, 356 Ill. 178.) Far from a reasonable doubt of guilt existing, the record proclaims defendant's guilt, and the jury was amply warranted in finding him guilty of larceny.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*