THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES BENNETT (Impleaded), Defendant-Appellant.

(No. 56234;

First District—January 26, 1973.

James J. Doherty, Public Defender, of Chicago, (Saul H. Brauner and Ronald P. Katz, Assistant Public Defenders, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Elmer C. Kissane, James R. Truschke, and Irwin J. Solganick, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Sidney Bolton and defendant James Bennett were indicted on three counts of murder relating to the death of James Pollard, and one count of armed robbery. Sidney Bolton was severed from the case and defendant James Bennett was tried alone. Following a pre-trial hearing, the court denied defendant's motion to suppress the arrest and identification and at the prosecution's request ruled that evidence of a similar occurrence on the same night was admissible. At trial, a jury found defendant guilty as charged and the court sentenced him to a term of fifty to one hundred years.

On appeal defendant contends: (1) that he was not proved guilty beyond a reasonable doubt because the identification was vague, doubt-

ful and uncertain; (2) that the State committed prejudicial error by introducing evidence of another crime to establish defendant's scheme or design; and (3) that his sentence was excessive and should be reduced.

During an armed robbery in the early morning hours of November 29, 1970, in the 3800 block of West Madison Street in Chicago, James Pollard was shot and killed. After the State's life-and-death witness testified, the following evidence was adduced at trial.

Catherine Dunson, the only occurrence witness, testified that she and James Pollard were on a date on the night of the incident. After leaving the Two Spot Lounge in the 3800 block of West Madison Street in Chicago at about 2:45 A.M., they walked west on Madison. As they were walking, a man came up behind them, stuck a gun in her back, and ordered them into a nearby alley which was lighted only by the street lights on Madison Street. Once in the alley, the man came around in front of the witness and the deceased so that he was facing them at a distance of four or five feet. He then announced the robbery, took the witness' purse, and without provocation shot James Pollard. On direct examination, the witness testified that the time to get the purse, announce the robbery, and fire the shot was three to five minutes, but on cross-examination stated that although she had a chance to look at the assailant, it took only a few seconds to announce the robbery and fire the shot. At the pre-trial hearing, the witness testified that she thought another man who was in front of them as they were walking was also involved in the incident.

In court, Catherine Dunson identified defendant as the man who had committed the crime saying: "I'll never forget his face, that's him." At the pre-trial hearing she stated that the man who committed the crime was a male Negro, 5'9" tall, weighing 160 pounds, without mustache or facial hair, and wearing a brown coat and tam. At the pre-trial hearing she also testified that she picked defendant out of a line-up about one month after the incident. At trial in response to cross-examination by defense counsel regarding the description she had given the police, the witness stated that the man was a male Negro about 5'9" tall, weighing 130 to 160 pounds, who had a mustache.

Mary Newman testified regarding a separate incident on the same night. She testified that she and her boy friend Ralph Bennett were walking east in the 3800 block of West Maypole Street in Chicago between 12:30 and 1:00 A.M. when they were approached by two men walking west on the same street. One of these men pulled a gun and ordered them into a nearby alley which was lighted only by a street light from a nearby bus platform. There, she and Ralph Bennett were searched and robbed. Afterwards, the man with the gun ordered them to run

out of the alley and fired a shot which missed them when they walked.

In court Mary Newman identified defendant as the man who robbed them and had the gun. She testified that she had told the police that the man with the gun was a male Negro, 6'1" or 6'2" tall, weighing 180 to 190 pounds, who had a small mustache, a low natural hair style, and a deep voice. Underneath a three-quarter length brown leather coat, he was wearing a blue and white knit sweater, dark pants, and black shoes. She testified that she too picked defendant out of a line-up a month after the incident.

Ralph Bennett also testified for the State regarding the separate incident which occurred only three blocks from the place where James Pollard was killed. Since his testimony corroborates Mary Newman's testimony, it need not be repeated here. Ralph Bennett, however, did identify the gun involved as either a .32 or a .38 caliber pistol and testified that he saw the man who had robbed him at a party subsequent to the incident carrying a .32 caliber automatic pistol. Ralph Bennett also identified defendant in court as the man with the gun who had robbed him and during the pre-trial hearing testified that he picked defendant out of a picture of a line-up.

The investigating police officer Richard Sandberg testified that he found a .32 caliber cartridge casing at the scene of the murder and another at the scene of the robbery of Mary Newman and Ralph Bennett. However, no gun was ever found. It was stipulated by both sides that James Pollard was killed by a .32 caliber bullet. A firearms expert, Joseph R. Celousky, testified that in his opinion the two cartridges came from the same gun.

Defendant asserted an alibi defense. Tommy Lee Williams the first defense witness testified that defendant returned alone to the apartment at 3832 West Maypole about 1:30 or 1:45 A.M. after a date and did not leave again.

Although she was later impeached regarding the time defendant left, Evelyn Bibbs defendant's girl friend testified that defendant was with her and another couple from about 10:30 to about 1:00 or 1:30 A.M. on the night of the incident. After defendant left her company, she next saw him at 3:00 A.M. when she returned to her apartment. When she arrived, she noticed that Sidney Bolton was shot and she and defendant went to the hospital where they saw Catherine Dunson who did not identify defendant.

Defendant James Bennett testifying on his own behalf denied that he killed James Pollard or robbed anyone. He stated that he returned to his girl friend's apartment after leaving her company and did not leave until he left with her to go to the hospital to be with Sidney Bolton

who had been shot. He saw Catherine Dunson at the hospital but she did not identify him as the assailant.

Although other witnesses also testified for the State in rebuttal, Catherine Dunson testified that she did not see defendant at the hospital on that night.

OPINION

■■ Defendant first contends that he was not proved guilty beyond a reasonable doubt because the identification was vague, doubtful and uncertain. The prosecution has the burden of proving beyond a reasonable doubt the identity of the person who committed the crime. (Ill. Rev. Stat. 1971, ch. 38, sec. 3-1.) Where the identification of a defendant is vague, doubtful and uncertain, the prosecution has not sustained its burden of proof and the conviction must be reversed. (*People v. O'Hara* (1928), 332 Ill. 436, 458-459, 163 N.E. 804, 812.) However, an identification by only one eyewitness to a crime is sufficient to justify a conviction even where defendant asserts an alibi defense if the witness is certain about the identification and is credible. (*People v. Kerbeck* (1935), 362 Ill. 251, 199 N.E. 789.) The credibility of witnesses, of course, is normally a question for the trier of fact.

■■ In the instant case, in addition to his alibi defense, defendant points to three factors which he believes raise a reasonable doubt about the accuracy of the identification. First, he mentions discrepancies in the description of the assailant's height, weight and facial characteristics. However, the only discrepancy defendant is able to find in the testimony of the prosecution's occurrence witness is that during the pre-trial hearing she stated that the assailant had no facial hair while at trial she stated that he had a mustache. Although her testimony differed somewhat from the testimony of those witnesses who testified regarding the similar incident, there was no discrepancy in her testimony regarding the height and weight of the assailant. It is well established in Illinois that minor omissions or discrepancies in description do not necessarily affect the validity of an identification although they may affect the weight to be given to the evidence. (*See, e.g., People v. Calhoun* (1971), 132 Ill.App.2d 665, 270 N.E.2d 450.) The reason for this rule is explained by the court in *People v. Ervine* (1965), 64 Ill.App.2d 82, 87, 212 N.E.2d 346, 349, which stated:

"[I]t is contrary to human experience to make an identification by noticing first the separate features, hair, or clothes of a person, and then, somehow, running off a total to determine recognition or non-recognition. Ordinarily all features are viewed at once and the recognition made instantaneously or not at all."

■■ Second, defendant asserts that a lapse of one month between the

incident and the line-up where he was identified raises a reasonable doubt about the identification. The amount of time intervening between the incident and the identification is a factor to be considered (*Neil v. Biggers* (1972), 41 U.S.L.W. 4064, 4068), but identifications have been upheld where much more time than one month has elapsed. *People v. Rodgers* (1971), 3 Ill.App.3d 85, 279 N.E.2d 72.

■■   Third, defendant argues that the lack of lighting and the quickness of the incident raises doubt about the identification. However, the witness testified that the assailant was facing her for a period of at least a few seconds and perhaps as long as five minutes. Moreover, the witness stated that despite the lighting she had a chance to look at the assailant and would "never forget his face." We believe the identification here is positive. This case is different from those cited by defendant. In *People v. Cullotta* (1965), 32 Ill.2d 502, 207 N.E.2d 444, the police had only a fleeting glance at a person from a moving car. In *People v. Marshall* (1966), 74 Ill.App.2d 483, 221 N.E.2d 133, the witness stated that he "didn't look that close." And in *People v. Gardner* (1966), 35 Ill.2d 564, 221 N.E.2d 232, where defendant's alibi was not impeached and was corroborated by other evidence.

■■   The defendant contends secondly that the State committed prejudicial error by introducing evidence of another crime to establish defendant's scheme or design. Evidence of defendant's other crimes is generally inadmissible in criminal cases because a jury may infer defendant's guilt from them. (*People v. Lehman* (1955), 5 Ill.2d 337, 342-3, 125 N.E.2d 506, 509.) However, there are certain well established exceptions to this rule, among them an exception to show defendant's scheme or design and proximity as to either time and place. *People v. Tranowski* (1960), 20 Ill.2d 11, 169 N.E.2d 347; *People v. Botulinski* (1945), 392 Ill. 212, 64 N.E.2d 486.

■■   In the instant case, the trial court admitted testimony regarding a separate armed robbery. Defendant was identified regarding both crimes and had an accomplice on each occasion. The two incidents took place within two hours and three blocks of each other. A shot was fired during each incident and .32 caliber shell casings fired from the same gun were found in both places. Moreover, although no gun was found, defendant had been seen with a .32 caliber pistol. In our opinion, the time, place and circumstances of the two incidents are sufficiently similar to justify the trial court's conclusion that the separate incident reflected defendant's scheme or design, and proximity as to both time and place.

■■■   Defendant also contends that his sentence should be reduced. Although this court has the authority to reduce sentences, this authority

will be exercised only in cases where the trial court has abused its discretion. We find no abuse of discretion here. Therefore, the sentence will not be reduced.

For the reasons stated above, the decision of the trial court is affirmed.

Affirmed.

DRUCKER, P. J., and ENGLISH, J., concur.