THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE JENKINS, Defendant-Appellant.

(No. 60168;

First District (1st Division)—September 2, 1975.

James J. Doherty, Public Defender, of Chicago (Anthony C. Sabbia and Edmund B. Moran, Jr., Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Donald M. Devlin, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

Willie Jenkins was found guilty after a bench trial of the crimes of rape and armed robbery. (Ill. Rev. Stat. 1973, ch. 38, pars. 11—1 and 18—2.) He was sentenced to a term of 6 to 18 years on each charge, the sentences to run concurrently. On March 31, 1975, upon agreement of the parties, this court reversed defendant's conviction for armed robbery. We now consider the defendant's appeal relating to the rape conviction. Defendant contends: (1) that the testimony relating to the identification of the defendant was improperly admitted into evidence because the

identification was obtained during a period of detention subsequent to an unlawful arrest made without probable cause and for investigatory purposes; (2) that the evidence was insufficient to establish his guilt beyond a reasonable doubt; and (3) that the trial judge in finding him guilty used a standard other than reasonable doubt.

At trial the prosecution called three witnesses, the complainant, the arresting officer, and the police officer, who conducted the lineup the defendant was placed in. The complainant testified that on May 24, 1973, at 9:20 p.m. she was standing on the corner of 18th and State Street in Chicago, Illinois, waiting for a bus. Two men, one of whom she later identified as the defendant, crossed the street and came up behind her, both grabbing her shoulder. The defendant, she testified, told her to "Shut up" while the other man placed a knife to her cheek. After she protested to be left alone they threatened to kill her. The two men then marched her across the street and down an alley to an apartment building where the complainant was forced to walk up to a third-floor porch landing.

There was a light bulb shining on the porch and also lights shining in the alley. The defendant, she testified, told her to have intercourse with him or he would kill her. The defendant then proceeded to have intercourse with the complainant three times and fellatio once. While this was taking place the other man stood by with the knife. At one point the defendant asked the complainant how much money she had, and she replied that she had $7. The defendant then asked for a "square" and the other man brought the defendant a cigarette.

After the defendant had intercourse with her for the final time, the other man said something to the defendant and the two men ran up to the fourth floor of the building and knocked on a door and shouted, "Hey, open the door." The complainant then ran down stairs and reported the incident to the police.

The complainant testified that while she was on the third-floor porch she looked at the defendant's face and stated that the defendant "stayed in my face all the while he was raping me." She testified that the defendant was wearing dark, brownish clothes and black boots, and that she had told the police he was about 5′ 8″ and 165 pounds. She testified that the defendant's face was hairy but she did not remember seeing a mustache or goatee on the defendant's face. She said he was not wearing a hat or glasses that night.

Daniel McCarthy, a Chicago police officer, testified that after arresting the defendant and taking him to the police station, the defendant asked for his Kool cigarettes and referred to them as "squares." It was stipulated at trial that an open pack of king-size Kool cigarettes was found

at the scene of the crime, 14 West 18th Street, on the third-floor rear porch. Officer McCarthy testified that he arrested the defendant a week after the crime about 50 feet from the building where the crime took place.

Officer McCarthy testified that he was present at the lineup where the complainant identified the defendant as her attacker. He testified that the complainant recognized the defendant's voice, but did not visually recognize the defendant originally because he was wearing a hat and sunglasses in the lineup.

The complainant testified that she viewed a lineup with six men wherein each was wearing a hat and glasses and each was asked to speak certain phrases. She recognized the defendant's voice and the boots he was wearing but did not recognize his face immediately because of the hat and sunglasses he was wearing. After all the men in the lineup removed their hats and glasses she recognized the defendant's face, stating at trial, "I won't forget that face" and "I never forget that face." She also made several in-court identifications of the defendant while she was on the stand.

Officer William Savage testified that he conducted the lineup. He testified that there were six men in the lineup and each was asked to repeat phrases. Officer Savage said that the complainant recognized the defendant's voice. At the end of the lineup officer Savage requested that she place her hand on the person's shoulder whom she recognized as the offender, and the complainant placed her hand on the defendant's shoulder.

Denis Sherman, an attorney, was the only witness called by the defense. He testified that during interviews with legal aid clients at the County Jail he had heard a number of his black clients refer to cigarettes as "squares."

The defendant's first two contentions on appeal relate to the legality of the defendant's arrest. He contends that the arresting officer lacked probable cause in making a warrantless arrest, and that the arrest was illegal even if the officer had probable cause because he was taken into custody merely for purposes of investigation. The defendant contends, therefore, that testimony relating to the identification of the defendant by the complainant was improperly admitted into evidence because the identification was obtained during a period of detention subsequent to the allegedly unlawful arrest.

A hearing on a motion to suppress the defendant's arrest and evidence obtained as a result of that arrest was held at which the defendant and the arresting officer testified. The arresting officer, Daniel McCarthy, called by the prosecution, testified that in May of 1973 he became in-

volved in the investigation of the rape of a woman other than the complainant. He was flagged down by a police patrol car in which this rape victim was riding at 18th and State Street in Chicago. The victim described her attacker as a male Negro, 5' 8", 145-150 pounds, dark complexioned. The rape had taken place at 14 West 18th Street.

Officer McCarthy testified that he later come into possession of a composite sketch of this woman's attacker. Beneath the sketch was a description of the offender as male Negro, 21 to 25, 5' 8" to 5' 10", 165 pounds, dark complexion, short goatee, dark heavy natural, and sunglasses. He testified that the composite sketch also contained a "gangster type" hat that this woman's attacker was wearing during the crime. The officer testified that he had reviewed a second report which pertained to the rape of the complainant in our instant case. The offender in this report was described as a male Negro, 5' 8", 25 years of age, 150 pounds and dark complexioned.

Officer McCarthy testified that on the evening of May 30, 1973, he parked his car within view of the building where the rapes had taken place. At about 11:30 p.m. he observed an individual who "similarly fit the description of the offender who was wanted for the alleged rape" enter the building. The next morning at about 9 a.m. the officer returned to this location with the composite sketch in his possession. One-half hour later the individual he had seen the night before exited the building and walked toward a liquor store. Officer McCarthy walked up behind him while examining the composite sketch he had in his hand. On cross-examination by defense counsel the officer answered, "That is correct," to the defense counsel's question:

> "And the reason that you had this bulletin is you stated that you spotted the man that looked like this composite, is that correct, prior to the date of your arresting this man?"

After the defendant exited the liquor store, Officer McCarthy identified himself as a police officer and announced he was taking the defendant into "custody for investigation." On cross-examination, he testified that he based the identification of the defendant on a combination of the composite sketch and the police reports of the two rapes involving the complainant and the other rape victim. He testified that the same type of hat as the defendant was wearing when arrested was depicted in the composite sketch, and that he had seen other individuals in that area wearing a similar type hat.

The defendant testified in his own behalf at the hearing to suppress the arrest. He testified that he was 22 years of age and lived at 10 West 18th Street, and that he was arrested next to that address. At the time he was arrested he was wearing a green army jacket, black and white

checked pants, a green hat and· sunglasses. He was 5' 11" and 145-150 pounds and had his hair in rollers. The arresting officer took him to the police station, and he was not told what he was charged with prior to the lineup. However, he testified that while being fingerprinted prior to the lineup he observed the word "rape" on the sheet, and he overheard the police officers discussing the rapes of two women.

■■ In Illinois a police officer may arrest a person even though he does not have an arrest warrant if the officer has reasonable grounds to believe that the person he is arresting has committed a criminal offense. (Ill. Rev. Stat. 1973, ch. 38, par. 107-2(c).) Reasonable grounds for such a belief require a belief which is based upon more than mere suspicion, but may be based upon a belief which is supported by something less than evidence which would result in a conviction. *People v. Jones*, 31 Ill.2d 42, 198 N.E.2d 821; *People v. Ivory*, 38 Ill.2d 339, 231 N.E.2d 438.

Defendant's contention that the arresting officer lacked reasonable grounds for arresting the defendant is based on the argument that the description of the rapist which the officer possessed was neither sufficiently accurate, detailed nor descriptive of the defendant to establish reasonable grounds for a belief that the defendant was the offender sought. Defendant emphasizes that the description of the offender in the police report of our complainant's rape was very general in nature, and failed to include a goatee or mustache in the description. The defendant had a goatee and mustache at the time he was arrested.

While it is true that the description in the report of our complainant's rape failed to mention a mustache or goatee, the description under the composite sketch of the offender the police were looking for included a goatee. The officer stated that he had arrested the defendant because he looked like the composite sketch. The description under the sketch accurately depicted the defendant as to his approximate age, height, weight, skin color, and facial hair. The defendant at the time of arrest was wearing the same type hat and sunglasses as depicted in the composite. Additionally, the arresting officer observed the defendant late at night enter the same building where both rapes took place and exit the building the following morning.

■■ Where an arrest is based upon an officer's belief that the defendant fits the description of an offender, a variation between one victim's description and a composite description does not negate reasonable grounds for an arrest where the composite itself provides an accurate and detailed description of the offender. (*People v. Payne*, 6 Ill.App.3d 378, 286 N.E.2d 35.) The composite description in officer McCarthy's possession accurately described the defendant, and the officer testified that he examined the composite sketch just before arresting the defendant. The

officer testified that the defendant looked like the sketch. We are of the opinion that these facts, in addition to the officer's observation of the defendant entering the building where the rapes took place and exiting the following morning, constitute reasonable grounds for the arresting officer to believe that the defendant had committed a crime.

The defendant contends, however, that even if the arresting officer had reasonable grounds to believe that the defendant had committed a crime, the arrest was still unlawful because the defendant was taken into custody merely for purposes of "investigation." The defendant bases this argument on the officer's testimony that he told the defendant at the time of arrest that he was "being taken into custody for investigation." Defendant cites *Staples v. United States* (5th cir. 1963), 320 F.2d 817, for the proposition that an arrest is an unlawful arrest where it is made merely for the purpose of investigation.

■■ We have already found that the arresting officer had reasonable grounds to believe the defendant had committed a crime. An arrest which is based on probable cause does not become unlawful merely because the arresting officer describes it as an arrest for "investigation." (*Ralph v. Pepersack* (4th Cir. 1964), 335 F.2d 128; *Bell v. United States* (D.C. Cir. 1958), 254 F.2d 82.) The facts surrounding the defendant's arrest point to the conclusion that the arrest of the defendant was made because the arresting officer had reasonable grounds to believe the defendant had committed a crime and not for mere purposes of investigation. The officer did not arrest the defendant when he first observed him on the night of May 30, 1973. Instead, the officer returned the next morning with the composite sketch and carefully compared the sketch to the defendant before making the arrest. If the officer had intended to arrest the defendant just for "investigatory" purposes, he could have done so the night of May 30th. He instead apparently wanted to be sure the defendant was the offender he was looking for before he made the arrest. While the defendant testified that he was not told what he was charged with until after the lineup, he also testified he observed the word "rape" on the sheet while he was being fingerprinted and overheard the two officers at the police station discussing the rapes of two women.

We are of the opinion that the arrest was made not for the purpose of investigation but rather was made because the arresting officer reasonably believed the defendant was the perpetrator of the two rapes he was investigating. Finding that the defendant's arrest was a lawful arrest, it is unnecessary for us to address the issue of whether a court must exclude identification testimony where the identification was obtained during a period of detention following an unlawful arrest.

The defendant's third contention is that the State failed to prove the defendant guilty beyond a reasonable doubt because the conviction was based upon a single eyewitness whose identification of the defendant was "doubtful, vague and uncertain." To support this contention the defendant points out that the complainant's testimony at trial described her assailant only in general terms and was contradictory concerning whether her assailant had a mustache and goatee.

■■ In *People v. Watkins*, 46 Ill.2d 273, 281, 263 N.E.2d 115, 120, it was stated that it is "undisputed in Illinois that where the identification of the accused is at issue, the testimony of one witness is sufficient to convict, * * * provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made." The description of the offender given by the complainant at trial was of a general nature. However, the test of whether a defendant has been positively identified at trial is not whether a full description of the defendant is elicited during the trial, but rather whether the witness who makes the in-court identification of the defendant had at the time the offense was committed sufficient time to observe the offender at a close enough distance, under adequate lighting conditions. (*In re Williams*, 24 Ill.App.3d 593, 321 N.E.2d 281; *People v. Johnson*, 6 Ill.App.3d 1003, 286 N.E.2d 380; see also, *People v. McCall*, 29 Ill.2d 292, 194 N.E. 2d 222.) Furthermore, a discrepancy or omission in describing an offender does not in itself normally create reasonable doubt as to the guilt of a defendant. *People v. Miller*, 30 Ill.2d 110, 195 N.E.2d 694; *People v. Tunstall*, 17 Ill.2d 160, 161 N.E.2d 300; *People v. Bennett*, 9 Ill.App.3d 1021, 293 N.E.2d 687.

■■ In the instant case, the complainant testified that the defendant had intercourse with her three times and fellatio once, which certainly implies that the complainant was with the assailant for a considerable period of time. The complainant also testified that there was a light bulb burning on the porch where the assault took place, and that she had looked in the assailant's face and the assailant's face was close to her throughout the assault. It is apparent that the complainant had an excellent opportunity to observe her assailant. Additionally, the complainant picked the defendant out of a six-man lineup one week after the assault, recognizing not only his face but his voice and boots. The complainant then made several in-court identifications of the defendant as the man who raped her. These facts provide a sufficient basis for a positive identification of the defendant as assailant of the complainant. We are of the opinion that the defendant's identification was not vague or uncertain and that the defendant was proven guilty beyond a reasonable doubt.

Defendant's final contention is that the trial judge used an improper

standard in finding him guilty. In finding the defendant guilty, the trial judge said:

"All other evidence surrounding the circumstances of what happened could or could not be taken to some extent in favor of either or against the defendant. But, the overall weight of the evidence without any question in the Court's mind placed him at the scene of the crime."

Defendant now urges that this comment made by the trial judge demonstrated that the court was using an erroneous standard in finding defendant guilty and was not using the standard that a defendant must be proven guilty beyond a reasonable doubt. We cannot agree with the defendant's contention in this regard.

We first note that even the court's statement quoted above contains the phrase "without any question in the Court's mind" which implies that the court had no reasonable doubts as to its finding. Furthermore, the remark complained of was one short sentence within an extensive finding of fact made at the conclusion of all of the evidence. The trial judge carefully reviewed the testimony adduced at trial as to each of the two charges against the defendant. In reviewing the testimony the court found that the complainant's identification of the defendant was positive. At the defendant's sentencing hearing several weeks after the trial the court stated, "I was satisfied, *without any question of a doubt*, as to the positive identification by the victim of Mr. Jenkins." (Emphasis added.)

■■ The trial judge's statement that the overall weight of the evidence without any question placed the defendant at the scene of the crime does not demonstrate that the court was using any standard other than reasonable doubt when the court found the defendant guilty. Furthermore, a review of the record clearly demonstrates that the defendant was proven guilty beyond a reasonable doubt.

Accordingly, the judgment is affirmed.

Judgment affirmed.

GOLDBERG and EGAN, JJ., concur.