THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SAMMY LEE LOTTS, Defendant-Appellant.

Fourth District   No. 14797

Opinion filed August 25, 1978.

Richard J. Wilson and Charles M. Schiedel, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (John R. DeLaMar and Jeffrey B. Ford, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE REARDON delivered the opinion of the court:

On June 16, 1977, the defendant, Sammy Lee Lotts, was charged by an 11-count information with the offenses of murder, attempted murder, and armed robbery in violation of sections 9—1, 8—4, and 18—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, pars. 9—1, 8—4, 18—2). The trial court granted the State's pretrial motion to dismiss counts VII through XI, which included the armed robbery counts. Following a jury trial, the defendant was found guilty of the murder of Joyce Unzicker and the attempted murder of Eugene Randall. On November 21, 1977,

defendant was sentenced to concurrent terms of 175 to 500 years for the offense of murder and 75 to 150 years for the offense of attempted murder. Defendant appeals.

On appeal defendant contends that: (1) he was not proved guilty beyond a reasonable doubt, and (2) it was error for the court to have given an instruction regarding the offense of attempted murder which incorporated all the alternative definitions of murder contained in section 9—1(a) of the Code (Ill. Rev. Stat. 1975, ch. 38, par. 9—1(a)).

Randall testified for the State that he was the assistant manager of the Central Finance Company in Champaign. At the company offices on June 15, 1977, at approximately 10:15 a.m., he spoke from a distance of approximately three feet with a black male who identified himself as Sam Lotts. Randall later identified this man in court as the defendant. The conversation concerned a loan application the defendant had previously filed with the finance company. The defendant arranged to return at 1:30 p.m. that afternoon. Randall stated that the defendant was in the building for about 10 minutes.

According to Randall, the defendant did not come back that day but returned to the finance company at approximately 10:15 a.m. on June 16, 1977. The defendant sat in the interview chair located an arm's length away at the end of Randall's desk. The defendant said, "Do you remember me?" and Randall responded, "Yes, you're Sammy Lotts." Randall and the defendant then discussed the loan application and the amount defendant wished to borrow. At this point, Unzicker, another employee, approached Randall's desk and informed Randall that he had a telephone call. As he turned to pick up his phone, he noticed a startled look on Unzicker's face. As Unzicker started to back away, he suddenly became aware of a huge explosion but did not immediately realize he had been shot in the neck. He stood up and saw Unzicker run down the aisle toward the back of the building. The defendant lunged at Unzicker but missed, and at this time Randall observed that the defendant had a gun. Randall began to chase the defendant who was pursuing Unzicker down the aisle. Randall came to a stop when he vomited blood, but saw the defendant raise a handgun and enter the coffee room. Randall went out the back door and ran across the driveway to a drive-in bank where he waved to a teller. After seeing the teller begin to dial the telephone, Randall tried to run back to the office but fell down in the parking lot. When police arrived, Randall was unable to talk because of his injury, but wrote the name "Sam Lotts" on a card for one of the officers.

While in the hospital following the incident, Randall was shown a series of photographs. Randall identified a photograph of the defendant as the man who had shot him on June 16. Randall testified that the lighting in his

office on June 16 had been excellent. Randall identified the defendant in court "without question" as the man who shot him on June 16, 1977.

On cross-examination, Randall was asked to examine a photograph introduced as Defendant's exhibit No. 1. Randall stated that the photograph was of the defendant. The photograph, however, was of Percy Jones. On redirect examination, Randall stated that the man portrayed in Defendant's exhibit No. 1 had a beard while the man he saw in the Central Finance offices on June 15 and 16, 1977, had no beard. On recross-examination, Randall stated that he did not recall his assailant having any facial hair.

Leota Lafenhagen testified for the State that she had been in the coffee room of the Central Finance Company at approximately 10:15 a.m. on June 16 when she heard a shot. Unzicker ran into the coffee room and told her that Randall had been shot. A man ran into the coffee room chasing Unzicker and raised his hand toward Lafenhagen. At this point, Lafenhagen turned, felt a "numbness" in the back of her head, and heard a noise which sounded like a gunshot. Lafenhagen then heard the man say to Unzicker, "OK, now, you run along to the safe." Lafenhagen saw both of them leave the room. Lafenhagen immediately called the police. As she was placing a second call for an ambulance, Lafenhagen heard another gunshot. Lafenhagen subsequently discovered Unzicker lying in front of her desk.

Approximately two days after the incident, Lafenhagen identified a photograph of the man she had seen in the coffee room on June 16, 1977. Lafenhagen identified in court the defendant as that man. Lafenhagen further testified that she had seen pictures of the defendant on television and in the newspapers prior to viewing the series of photographs. Lafenhagen stated, however, that she had made her photographic identification from her observation of the man in the coffee room and not from pictures in the media. Lafenhagen also acknowledged that she told police after the shooting that she was not sure she could identify the man.

The defendant testified in his own behalf. He stated that he visited the Central Finance Company on Wednesday, June 15, 1977, to inquire about a loan application which had been previously submitted by his mother. He decided not to return that afternoon as arranged.

The defendant maintained that he was never in the Central Finance offices on June 16, 1977. On that morning, defendant stated that he visited the residence of V. W. Fairman in Birch Village at approximately 10 a.m. and talked to Fairman for about 15 to 20 minutes. The defendant said he knew the time because he was wearing his watch. After this conversation, the defendant rode to Bradley Street where he conversed with Abdullah Khan for approximately 25 minutes. He then rode to Bradley Park where

he spoke to Jeff Davis for approximately 5 to 10 minutes. Both Fairman and Khan corroborated defendant's testimony.

The defendant further testified that on June 15 and 16, he had sideburns just below his ears, a moustache, and a goatee approximately ½ inch past his chin. Florence Lotts, defendant's mother, and Grace Brown, defendant's girlfriend, also testified that the defendant had a moustache and goatee on June 15 and 16.

Following closing arguments, the jury was instructed on the charges of murder and attempt murder. The attempted murder instruction (Illinois Pattern Jury Instructions, Criminal, No. 6.07 (1968) (hereinafter cited as IPI Criminal)) stated that to sustain the charge of attempted murder, the State must prove that the defendant performed an act which constituted a substantial step toward the commission of the crime of murder and that he did so with intent to commit the crime of murder. People's Instruction No. 19 (IPI Criminal No. 7.01) defined murder as follows:

> "A person commits the crime of murder who kills an individual if, in performing the acts which cause the death, he intends to kill or do great bodily harm to that individual; or he knows that such acts will cause death to that individual; or he knows that such acts create a strong probability of death or great bodily harm to that individual; or he is attempting to commit or is committing the crime of robbery or armed robbery."

Defendant contends that weaknesses in the identification testimony by State witnesses Randall and Lafenhagen failed to remove all reasonable doubt of defendant's guilt. Defendant points to Randall's incorrect identification of a photograph at trial, and Randall's testimony that the man who shot him had no facial hair in contrast to defendant's testimony that he had a moustache and goatee on the date of the occurrence. Defendant also cites Lafenhagen's statement to police after the incident that she was not sure she could recognize the offender. Further, defendant notes that Lafenhagen's pretrial and in-court identification of the defendant occurred after she had been exposed to pictures of the defendant in the news media.

■■ It is well established that the failure of a witness to note a particular facial characteristic, such as a moustache or beard, will not render his identification of a defendant infirm, provided the witness had an adequate opportunity to observe the offender so as to permit a positive identification. (*People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819; *People v. Jenkins* (1975), 31 Ill. App. 3d 910, 335 N.E.2d 87.) In *Williams*, the supreme court found that the failure of a witness to mention a moustache in her description of the defendant was not crucial since she had an opportunity to observe the defendant over seven minutes at distances of just a few feet. (60 Ill. 2d 1, 11, 322 N.E.2d 819.) In *Jenkins*, a

rape victim failed to include a goatee or moustache in the description of the offender given to police. The defendant had a goatee and moustache at the time he was arrested seven days after the incident. The description of the offender given by the victim at trial was of a general nature. The court held that since the victim had an excellent opportunity to view her assailant's face during the assault and was able to positively identify the defendant in a lineup and in court, the omission of defendant's moustache and goatee did not create reasonable doubt as to the guilt of a defendant. 31 Ill. App. 3d 910, 917, 335 N.E.2d 87.

Such inconsistencies, inaccuracies, and omissions in the description of an offender by a witness who is otherwise able to positively identify the defendant are questions for the jury to consider in determining the weight to be given to the testimony. *People v. Guyton* (1972), 53 Ill. 2d 114, 118, 290 N.E.2d 209; *People v. Bricker* (1977), 48 Ill. App. 3d 452, 454, 363 N.E.2d 190; *People v. Mullen* (1976), 43 Ill. App. 3d 311, 313, 356 N.E.2d 1337.

Further, the credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made. (*People v. Jones* (1975), 60 Ill. 2d 300, 307-08, 325 N.E.2d 601; *People v. Stringer* (1972), 52 Ill. 2d 564, 569, 289 N.E.2d 631.) In *Stringer,* the supreme court affirmed a murder conviction where the only identifying eyewitness observed the defendant in early daylight for three to four minutes from across the width of a city street.

In the instant case, Randall clearly had an adequate opportunity to make a positive identification of his assailant. On the day preceding the incident, Randall spoke with a man he testified was the defendant at a distance of three feet for several minutes under excellent lighting conditions. The defendant admitted that he came into Central Finance to discuss his loan application on that day and identified himself as Sammy Lotts. On the following day, Randall again engaged his assailant in conversation at an arm's length for several minutes prior to the shooting. Following the shooting, Randall wrote the defendant's name on a card for police. Several days after the incident, Randall identified the defendant's photograph from a series of pictures. Randall again positively identified the defendant in court. Although Lafenhagen only had a brief opportunity to observe the offender, she did testify that her identifications of the defendant were not based upon prior exposure to pictures of the defendant in the news media.

■■ Despite the noted weaknesses in the identification of the defendant by Lafenhagen and Randall, it is evident from the record that Randall, at least, had an adequate opportunity to observe the assailant so as to permit a positive identification. Under these circumstances other discrepancies in

identification by Randall and Lafenhagen were properly for the jury to consider in assessing the weight of their testimony. The determination of the jury will not be set aside unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. (*People v. Tate* (1976), 63 Ill. 2d 105, 108, 345 N.E.2d 480; *People v. Zuniga* (1973), 53 Ill. 2d 550, 559, 293 N.E.2d 595.) We find that the identification testimony of both witnesses sufficiently supports the defendant's convictions and does not raise a reasonable doubt of defendant's guilt.

■■ ■ Defendant secondly contends that the trial court committed reversible error in giving People's Instruction No. 19 regarding the offense of attempted murder which failed to limit the definition of murder to an act committed with an intent to kill. Defendant, however, failed to object to People's Instruction No. 19 on this basis during the instructions' conference and failed to specifically raise this issue in his post-trial motion. Generally, such omissions constitute waiver of the issue on appeal. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856; *People v. Wheeler* (1965), 57 Ill. App. 2d 452, 464, 206 N.E.2d 727.) We note, however, that Supreme Court Rule 615(a) provides that plain errors or defects which affect substantial rights may be noticed on appeal although they were not brought to the attention of the trial court. (58 Ill. 2d R. 615(a).) Further, Rule 451(c) provides that substantial defects in instructions are not waived by counsel's failure to make timely objections to them if the interests of justice require. 58 Ill. 2d R. 451(c).

In *People v. Viser* (1975), 62 Ill. 2d 568, 343 N.E.2d 903, the supreme court held that it was reversible error to give an instruction concerning attempted murder which included a definition of felony murder. The court stated that the offense of attempt "* * * requires 'an intent to commit a specific offense' * * * while the distinctive characteristic of felony murder is that it does not involve an intention to kill. There is no such criminal offense as an attempt to achieve an unintended result." (62 Ill. 2d 568, 581, 343 N.E.2d 903, 910.) In *People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888, the supreme court held that it was reversible error for the jury to receive an instruction on attempted murder which included a definition of murder that the defendant knew his act created a strong probability of death or great bodily harm. The court stated that the offense of attempted murder requires a specific intent to kill. 68 Ill. 2d 198, 201, 369 N.E.2d 888.

In *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28, the supreme court overruled that part of *People v. Muir* (1977), 67 Ill. 2d 86, 365 N.E.2d 332, which had held that it was not erroneous for the jury to be instructed that proof only that a defendant knowingly and intentionally

created a strong probability of death or great bodily harm to another person satisfies the intent element required for attempted murder. The court further held that it was error for an attempted murder instruction to include in the definition of murder that the defendant intends to do great bodily harm to that individual. The court in *Harris* stated: "An instruction must make it clear that to convict for attempted murder nothing less than a criminal intent to kill must be shown." 72 Ill. 2d 16, 27, 377 N.E.2d 28, 33.

■■ This court is not unaware of the difficulties present in properly instructing the jury in instances where the defendant is charged with the murder of one person and the attempted murder of another. IPI Criminal No. 6.07(2), concerning attempted murder, might be modified to read that the act was done with an intent to kill in accordance with *Harris*. On the other hand, severance may be the only adequate solution since modification of that instruction may make it arguably inconsistent with the required murder instruction, IPI Criminal No. 7.01. In any event, and in view of the recent supreme court decisions, it is clear that an attempted murder instruction must limit the accompanying definition of murder to an act committed with an intent to kill. We find, therefore, that the trial court in the instant case committed reversible error in giving People's Instruction No. 19 which incorporated the alternative definitions of murder contained in section 9—1(a) of the Code in their entirety.

For the foregoing reasons, the judgment of the circuit court is affirmed as to defendant's conviction of murder, but reversed and remanded for a new trial as to defendant's conviction of attempted murder.

Affirmed in part, reversed in part, and remanded with directions.

GREEN, P. J., and TRAPP, J., concur.