THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HERNANDEZ JACKSON, Defendant-Appellant.

First District (1st Division)   No. 77-1775

Opinion filed April 23, 1979.

Lawrence J. Suffredin, Jr., and Patrick G. Reardon, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Michael E. Shabat, and Michael L. Closen, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

At the conclusion of a jury trial the defendant, Hernandez Jackson, was found guilty of two counts of armed robbery. Judgments were entered on the verdicts and the defendant was sentenced to a single term of four years to four years and a day in the penitentiary.

On appeal the defendant contends that: (1) his conviction was improperly based upon evidence which was the fruit of an unlawful arrest; (2) the trial court abused its discretion in denying his motion for a continuance; (3) he was denied a fair trial when the trial court permitted improper testimony to be placed before the jury; and (4) his guilt was not established beyond a reasonable doubt.

We affirm the defendant's conviction as to count I and reverse his conviction as to count II. The following facts are pertinent to the disposition of this appeal.

The testimony presented at the trial indicates that at approximately 4:30 p.m. on October 30, 1974, Calvin Curry and Lee Braxton were walking down the stairs of a highrise housing project building located at 4155 Lake Park, Chicago, Illinois. As they rounded a turn on the stairs they were confronted by the defendant who pointed a sawed-off shotgun at Curry's face. Curry testified in court that the defendant was standing four to five feet from him on a landing between the ground floor and the second floor and that the lighting was good.

The defendant was accompanied by another adult and eight or nine children. The defendant commanded Braxton and Curry to turn and face the wall. Curry testified that he faced the defendant for one minute before being told to turn around. The victims obediently turned around and placed their hands up against the wall. Curry further testified that at the defendant's instruction the children searched his pockets and took his wallet, watch and personal papers. The other adult offender searched Braxton's pockets but no property was taken from his person or presence. During the commission of the offense, Curry turned around momentarily and pleaded with the defendant not to kill them. The defendant told Curry to turn back around and face the wall which he did. When the children had finished going through Curry's pockets the defendant and his accomplices left the scene. Curry stated that the entire incident lasted approximately five minutes.

Immediately after the incident Curry and Braxton came out of the entry of the building and flagged down a police car. At the trial Curry testified that in relating the incident to one of the officers he described the man with the shotgun as wearing a black knotted scarf on his head, and having a little moustache and squinty pink eyes. The police report did not contain any description of the offenders.

The defendant was arrested on December 3, 1974, by Officer Daniel Davis. Officer Davis had no warrant for the arrest. A motion to quash the arrest was filed on November 21, 1975. On October 5, 1977, at the hearing on the motion to quash the arrest, Officer Davis testified that he was given the defendant's name and address by Leroy McCaster. McCaster had just been arrested for the armed robbery of Willie Brown which had occurred earlier in the day on December 3, 1974, at 4155 Lake Park, Chicago, Illinois. In a conversation with Officer Davis immediately after the alleged offense Brown named McCaster as one of the robbers and McCaster was subsequently arrested in his apartment at 4155 Lake Park.

Officer Davis further testified that after his arrest McCaster admitted his participation in the robbery of Brown and told him and his partner, Officer Paul Newell, where weapons used in this robbery were kept in another apartment at 4155 Lake Park. Officer Davis went with his partner and McCaster to that apartment and recovered the weapons. After being transported to the police station McCaster told Officer Davis of 14 other specific robberies that he had participated in in the area around 4155 Lake Park. McCaster implicated the defendant as his accomplice in these other robberies. Officer Davis stated that McCaster identified the defendant by using the defendant's nickname of "Cowboy." McCaster also supplied the officer with the defendant's address and with a physical description of the defendant. Officer Davis went on to testify that before arresting the defendant he examined the police reports of 14 or 15 robberies with similar modus operandi which were committed in the area around 4155 Lake Park including the armed robberies of Calvin Curry and Lee Braxton on October 30, 1974. Officer Davis then arrested the defendant at his apartment at 4155 Lake Park. When arrested the defendant answered to the nickname of "Cowboy."

Later that same evening the defendant was placed in a lineup where he was viewed by Curry and Braxton. Curry made an identification of the defendant at the time and later identified him at the trial as one of the offenders. Braxton did not identify the defendant at the lineup. Furthermore, he was not called to testify at the trial. The defendant was indicted on two counts for the armed robberies of Calvin Curry (count I) and Lee Braxton (count II).

The defendant initially contends that the trial court erred in not granting his motion to suppress evidence. The defendant sought to suppress the lineup identification on the grounds that the evidence was obtained incident to an unlawful arrest. He asserts that his arrest was unlawful because the officer making the arrest lacked probable cause. The defendant attributes this absence of probable cause to the failure of Officer Davis to independently verify information received by an

informant, Leroy McCaster, that the defendant had engaged in unlawful activity.

In recent years considerable confusion had developed with regards to the methods of establishing probable cause for warrantless arrests based upon tips from "informants." Counsel for both parties have cited numerous cases in this regard. We do not find that they are controlling in the case at bar. We believe that the situation in the case before us is entirely different from the situation in which information is supplied by either a "professional" or "ordinary citizen" informant with regards to a crime alleged to have been committed.

■■■ "The rule is that probable cause exists for arrest where a reasonable and prudent man, having knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense." (*People v. McKee* (1968), 39 Ill. 2d 265, 273, 235 N.E.2d 625.) Where a co-offender, who is under arrest and in custody, supplies the officer with a "tip" implicating alleged accomplices, the test is whether the statement of the co-offender constitutes probable cause for the arrest of the alleged participating accomplices. *People v. Atkinson* (1974), 21 Ill. App. 3d 258, 315 N.E.2d 152. See also *People v. Sims* (1978), 58 Ill. App. 3d 668, 374 N.E.2d 1050.

The facts presented in two Illinois Supreme Court cases are strikingly apposite to the facts of the case before us. In *People v. Denham* (1968), 41 Ill. 2d 1, 241 N.E.2d 415, Leon Miller, who was arrested in connection with a robbery, implicated Richard Ford, who was subsequently arrested. Ford in turn told police officers that the defendant was committing burglaries in the old town area together with Irving Duffy. Based upon this information the defendant was arrested without a warrant. The defendant was carrying a knife at the time of his arrest. The court stated:

> "We believe that the facts before us constituted probable cause for defendant's arrest. The arresting officer had information from one person arrested as a member of a robbery gang implicating the defendant and Irving Duffy as members of the gang. Interrogation of Duffy corroborated the fact of defendant's place of employment and the mutual acquaintance between Irving Duffy and the defendant, and also the fact that defendant was 'crazy' and armed. This was far more than the unsolicited and uncorroborated 'tip' in *Parren* [24 Ill. 2d 572, 182 N.E.2d 662] and fully justified prompt police action in arresting and searching the defendant." *Denham*, at 5.

Similarly in *People v. McKee* (1968), 39 Ill. 2d 265, 273, 235 N.E.2d 625, the court stated:

"Here two men had been arrested and, admitting their own participation in the robbery and murder, they implicated defendant McKee and told the police where he might be found. The police immediately went to the hotel, inquired as to the room of defendant, found the door in the process of being opened by defendant, announced their identity and purpose, arrested him and removed a gun from his person. We hold such arrest to be lawful and fully supported by probable cause and his statement made at that time to be admissible."

In the case before us, Leroy McCaster, while under arrest for the robbery of Willie Brown admitted his participation in this offense and told Officer Davis and his partner where weapons used in this robbery could be found in an apartment at 4155 Lake Park. After recovering the weapons from this apartment the officers transported McCaster to the police station. While in custody at the station McCaster informed Officer Davis and his partner that the defendant had been his accomplice in a number of other robberies in the area around 4155 Lake Park. McCaster identified the defendant by the use of the nickname of "Cowboy." McCaster also supplied the officer with a physical description of the defendant and gave the officer the defendant's address. Officer Davis examined police reports of robberies with similar modus operandi committed in the area around 4155 Lake Park including the robberies of Calvin Curry and Lee Braxton on October 30, 1974. The officer then went to the apartment named by McCaster and arrested the defendant who had answered to the name of "Cowboy." We believe that the facts and circumstances presented to Officer Davis would have led a reasonable person to conclude that the defendant had participated in an offense and there was sufficient probable cause to arrest him. Therefore, the identification was not the fruit of an illegal arrest and was properly admitted into evidence by the trial court.

The defendant also suggests that the trial court abused its discretion in denying his motion for a continuance. He contends that the court should have granted a two-hour continuance in order for him to obtain the presence of a rebuttal witness, Leroy McCaster, for the hearing on the motion to quash the arrest. We disagree.

It is well settled in Illinois that the granting of a motion for a continuance to procure a witness is within the sound discretion of the trial court (Ill. Rev. Stat. 1975, ch. 38, par. 114—4(e)) absent a clear showing of abuse. (*People v. Boyce* (1977), 51 Ill. App. 3d 549, 366 N.E.2d 914; *People v. Newbern* (1974), 18 Ill. App. 3d 532, 210 N.E.2d 42.) "[W]e evaluate the trial court's decision in light of the circumstances which existed at the time of the request." (*People v. King* (1977), 66 Ill. 2d 551, 557, 363 N.E.2d 838.) Where the defendant has failed to act diligently to

obtain the presence of a witness the defendant's motion for a continuance to produce this witness will be denied. *People v. Rivera* (1978), 64 Ill. App. 3d 49, 380 N.E.2d 1018; *People v. Timms* (1978), 59 Ill. App. 3d 129, 375 N.E.2d 1321; *People v. Boyce.*

■■ ■ In the case at bar the motion to quash the arrest was filed on November 21, 1975, but was not heard until October 5, 1977. The defendant had almost two years in which to prepare for the hearing on this motion. The defendant argues that he did not become aware of the importance of McCaster as a rebuttal witness until the hearing commenced. The record indicates, however, that the defendant had McCaster's phone number and had, in fact, attempted to bring him to court for the hearing on October 5, 1977. Furthermore, it was not until after the defendant had rested at the hearing that he requested and was granted a 10-minute recess to call McCaster. When McCaster could not be reached the defendant requested a two-hour recess to bring him to court. There was no guarantee that McCaster could be located within two hours. Accordingly, we hold that under the facts and circumstances in this case the denial of the defendant's motion for a continuance was not an abuse of the trial court's discretion. On the same basis the denial of the defendant's motion to reopen the evidence on the motion to quash the arrest was proper.

The defendant further contends that he was prejudiced by the admission of certain testimony of Officer Davis. He argues that the admission of this testimony was erroneous and deprived him of a fair trial because it was based on hearsay. We cannot agree with this argument.

Officer Davis testified over defense counsel's objection that he had a conversation with Willie Brown during his investigation concerning a series of armed robberies. Pursuant to this conversation, Officer Davis commenced a search for the robbery offenders. Subsequently, he arrested Leroy McCaster. After having a conversation with McCaster Officer Davis arrested the defendant. Officer Davis' testimony concerning the recovery of a shotgun and rifle after the conversation with McCaster was stricken from the record and the jury was instructed to disregard the testimony. All other testimony of Officer Davis was allowed to stand.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738.) The testimony of a witness that is confined to the simple fact that a conversation took place is not hearsay. *People v. Finley* (1978), 63 Ill. App. 3d 95, 379 N.E.2d 645; *People v. Sedlacko* (1978), 65 Ill. App. 3d 659, 382 N.E.2d 363.

■■ In the instant case the trial court properly allowed Officer Davis to testify that he had a conversation with McCaster. Testimony concerning the substance of this conversation was stricken from the record and the

jury was instructed to disregard it. Therefore, the testimony of Officer Davis which was placed before the jury did not prejudice the defendant or deny him a fair trial.

The defendant's next contention is that the weaknesses in the sole identification testimony of Calvin Curry failed to remove all reasonable doubt of the defendant's guilt as to count I. This contention is without merit.

The defendant asserts that there was insufficient opportunity for Curry to observe the assailant during the robbery and therefore to identify the defendant as the perpetrator. The defendant also attacks Curry's identification by pointing out that Curry's initial description to the police officer was vague in that he could only remember that the assailant had a black scarf knotted on his head, a little moustache and squinty pink eyes.

■■ "A reviewing court may not substitute its judgment for that of the jury on questions involving the weight of the evidence or the credibility of the witnesses [citation], and we will not reverse a conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt [citation]." (*People v. Hemphill* (1978), 62 Ill. App. 3d 977, 981-82, 379 N.E.2d 1284.) It is undisputed in Illinois that the positive credible testimony of a single identification witness with ample opportunity to observe is sufficient to support a conviction. (*People v. Lotts* (1978), 63 Ill. App. 3d 240, 380 N.E.2d 66; *People v. Jones* (1975), 60 Ill. 2d 300, 325 N.E.2d 601; *People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631. Additionally, omissions in initial descriptions do not affect the credibility of a witness' identification or raise a reasonable doubt of the defendant's guilt where the witness had a sufficient opportunity to observe the assailant. *People v. Hemphill* (1978), 62 Ill. App. 3d 977, 379 N.E.2d 1284; *People v. McCall* (1963), 29 Ill. 2d 292, 194 N.E.2d 222; *People v. Tunstall* (1959), 17 Ill. 2d 160, 161 N.E.2d 300; *People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 337 N.E.2d 454.

■■ In the instant case the victim, Calvin Curry, testified that he was confronted by a man who pointed a sawed-off shotgun at him. The assailant was standing four to five feet away. Bright lights were on and the victim could see his assailant. On cross-examination the victim established that he observed the defendant for about one minute before he turned around to face the wall at the direction of the defendant. Furthermore, during the robbery the victim turned his head toward the defendant and pleaded with the defendant not to kill him. Again, the victim had an opportunity to observe the defendant's face. In addition, the victim made positive identifications of the defendant at both the lineup and at the trial. We find, therefore, that the positive identification testimony of the victim,

Calvin Curry, alone sufficiently supports the defendant's conviction as to count I and does not raise a reasonable doubt as to the defendant's guilt.

The defendant's final contention is that as to count II he was not proven guilty beyond a reasonable doubt of a taking of property from the person or presence of another as required in sections 18—1 and 18—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, pars. 18—1, 18—2). We agree.

The State concedes that no evidence was presented during the trial to establish that any property was taken from the person or presence of Lee Braxton. It maintains, however, that there was sufficient evidence to find the defendant guilty of the attempt robbery of Braxton, and in light of this evidence it asks this court to remand for sentencing for attempt armed robbery on count II.

■■ We reverse the defendant's conviction of armed robbery as to count II as there was no evidence presented at the trial of a taking of any property from the person or presence of Lee Braxton. We will not remand for sentencing for the attempt armed robbery of Lee Braxton as the defendant was not indicted for this offense.

For the foregoing reasons the judgment of the trial court is affirmed as to count I and reversed as to count II.

Affirmed in part and reversed in part.

McGLOON and O'CONNOR, JJ., concur.