THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ARCHIE HAYNES, Defendant-Appellant.

First District (4th Division)   No. 79-666

Opinion filed August 21, 1980.—Rehearing denied November 13, 1980.

Sam Adam and Marvin Bloom, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Richard F. Burke, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:
Following a bench trial, defendant was convicted of murder and

burglary and sentenced to concurrent terms of 40 years for murder and 15 years for burglary. (Ill. Rev. Stat. 1977, ch. 38, pars. 9—1, 19—1.) On appeal, defendant contends (1) his post-arrest statements were improperly admitted into evidence since there was no probable cause for his arrest which was also illegal because he was arrested in his home without an arrest warrant; and (2) he was deprived of a parent's advice during his interrogation, thus rendering his statement inadmissible.

Prior to trial, defendant filed a written motion to suppress evidence alleging that on July 16, 1976, police officers, who did not have either an arrest warrant or a search warrant arrested him at his home at 8354 South Paxton, in Chicago. This arrest occurred after the police told his mother that they merely wanted to talk to him and would do so outside in the police car. However, defendant claimed that the officers drove him to a police station; that the arresting officers did not notify his mother, who was the only adult home, where he was being taken; that his mother spent most of the morning of July 16, 1976, attempting to locate defendant and did not locate him until approximately 4 p.m. that day; that at the time of his arrest, defendant was not violating any law, and the arresting officers did not have any reasonable belief that a warrant had in fact been issued and was outstanding for defendant's arrest and did not have probable cause to arrest him; and that this was in violation of Illinois statutes, including section 3—2 of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 703—2), which provides that a law enforcement officer who takes a minor into custody shall immediately make a reasonable attempt to notify his parent or other person responsible for his care that the minor has been taken into custody and where he is being held.

At the hearing on the motion to suppress, Chicago police officer Nealis testified that, when he arrested defendant, he did not have a warrant for defendant's arrest, there was no warrant in existence, to his knowledge, and defendant did not appear to be fleeing when arrested.

However, prior to the arrest Officer Nealis had talked with Officers Tosello and Swick, who had told him that they had spoken to an 11-year-old boy named Ernest Williams. The latter claimed he lived in defendant's neighborhood and that Newgene Anderson had been involved in or spoke of a burglary or a crime or theft some months earlier wherein $60 and an antique watch had been taken from this old woman's house. In checking through the burglary case reports, he found that a woman had reported a burglary of her home and sustained a loss of $60 and an antique watch. Upon inquiring to the youth division, he found out that a juvenile warrant had been issued for Anderson's arrest.

Officer Nealis arrested Anderson at his residence between 6:30 and 7 a.m. on July 16, 1976. Officer Nealis stated that Anderson denied committing the offense involved in this case but stated that a friend of his had committed it, and had told him about it. Anderson said that defendant had

entered the home of Alfhild Heil and "gotten the old white lady down the street"; that he had confronted her in the home; that he had placed a pillow over her head; and that he had beaten her. Officer Nealis was also informed by Anderson that defendant admitted that he had taken a purse from the victim's home, and he showed Anderson the contents of this purse which contained money. Officer Nealis explained that he then questioned Anderson about particular matters concerning the home invasion and Anderson said defendant indicated he had gone in the back window, down the stairs and through the pantry. Officer Nealis, who visited at the crime scene, reviewed reports of other officers concerning the matter and had spoken with other investigators working on the case, believed Anderson's information corresponded to what the police had "surmised" from an investigation concerning how the perpetrators of the crime in fact entered the victim's residence. Officer Nealis, who had not previously known Anderson or had information provided by Anderson, went to defendant's home, but he did not attempt to secure an arrest warrant.

Officer Nealis then testified he arrested defendant at his home shortly before 9 a.m. on July 16, 1976. Also present at the time were investigators John Yucaitis, David Dioguardi and Alice McCree. He spoke to a woman, who identified herself as defendant's mother, and informed her that her son had been implicated in a crime and that they were going to take him to a police station located at 9050 South Cottage Grove Avenue. The officer gave defendant's mother a business card with his name printed on it, the telephone numbers of the officer and the address. He also wrote the name of his partner, Officer Yucaitis, on the business card. He denied telling defendant's mother that he merely wanted to talk to her son and would do so outside in the police car, or that he gave her the impression that he was not taking defendant to the police station. He then proceeded with defendant in custody to 9059 South Cottage Grove Avenue, the Area 2 homicide office.

At approximately 9 a.m. with Youth Officer Matthews present, Officer Nealis had a conversation with defendant for 15 or 20 minutes. He first advised defendant of his *Miranda* warnings and that anything he might say could be used against him not only in a juvenile proceeding but at criminal court in a possible adult proceeding; defendant stated he understood. He also informed defendant that the officers had learned from Newgene Anderson, whom defendant admitted he knew, that defendant was implicated in the death of Alfhild Heil, a 75-year-old female, and asked defendant if he knew this woman.

Defendant stated that he did. Officer Nealis was also present during an interview that took place at noon that same day. Also present at that time were Officer Matthews, Assistant State's Attorney Ed Vienuzis and a court reporter, Jim Cronin. Defendant gave a written confession at that time to the murder and burglary.

Assistant State's Attorney Edward Vienuzis testified that on July 16, 1976, he spoke with Officers Yucaitis and Nealis concerning an ongoing investigation of a homicide that had occurred on July 14, 1976, at 8425 South Paxton Avenue. He spoke to defendant at approximately 11 a.m. for 20 minutes; youth officers Matthews and Pittocora were present. He advised defendant of his constitutional rights and had a subsequent interview at approximately noontime with a court reporter present. Present at this time were Officers Nealis and Matthews and the court reporter.

Richard Matthews testified he is a Chicago Police Department youth officer. On July 16, 1976, he arrived at work at approximately 8 a.m. Shortly thereafter, he was told to go upstairs because there was a murder investigation going on. Officers Nealis and Yucaitis had two juveniles in custody. One of these was defendant, who was alone at that time. At approximately 9 or 9:15 a.m. he was present during a conversation in which Officer Nealis asked defendant questions. He heard Officer Nealis advise defendant of his rights under *Miranda* and his "juvenile rights" before he was questioned. Later, he was present when Assistant State's Attorney Vienuzis interviewed defendant at 10:30 or 11 a.m. This took 15 or 20 minutes. At approximately noon, he was again present with Officer Nealis and a court reporter when Vienuzis took a written statement. Vienuzis then went into the room with defendant, read him the typed statement and asked defendant if it was correct. He saw defendant make some corrections and initial each correction with a pen before signing the statement. At no time did defendant ask to see either of his parents. On cross-examination, he testified he was told to go upstairs at 8:10 or 8:15, and he went up immediately. When he arrived upstairs, defendant was already there.

Johnnie Haynes, defendant's mother, testified that on July 16, 1976, her husband left for work at approximately 4 a.m. About 5:10 a.m., two detectives came in. They did not give their names, but said they were detectives and wanted to see the 16-year-old defendant, who was in bed. She then sent her grandson upstairs to bring defendant down. One officer then told defendant he wanted to talk to him outside and ask him some questions. After defendant went to the bathroom, he came back and went out the door with the police officers. Subsequently, she called the nearest police station, at 88th and Exchange, which is approximately one mile away, because no officer ever called to tell her where defendant was. She kept calling the police station, but the police told her they did not have defendant at that station. She testified that she made about one dozen calls but could not reach defendant. She went to the Main Post Office, where her husband worked, about 2 p.m. and told him what had happened. They both went to the police station on Cottage Grove, where the police told her husband defendant was upstairs.

On cross-examination, she testified that Officer Matthews was one of

the officers who came to her house. She denied that she opened the door for the police officers. Rather her 14-year-old daughter went to the door and she accompanied her. Her daughter then opened the door. She also stated that she arrived at the proper police station at Area 2 homicide at approximately 4 p.m. and was able to see her son.

Jimmie Haynes testified that defendant was his son. The witness said that he left for work at the Main Post Office at approximately 4 a.m. on July 16, 1976. Later his wife arrived at his work place around 2:30 p.m. She explained to him that the policeman had picked up their son and she had tried unsuccessfully to discover his whereabouts. He called the nearest police station at 88th and Exchange, but the police said that defendant was not there. This witness then took the car and went to the next police station at 91st and Cottage Grove, arriving there at 4 or 4:30 p.m. There he saw defendant who was handcuffed to a radiator.

The trial court denied the motion to suppress, finding that the officers had probable cause to arrest and were duty bound to go out and take defendant into custody after Anderson had implicated him in the recent murder that the officers had to solve as quickly as they could. The trial court specifically found there was no legal necessity to secure an arrest warrant. Respecting the absence of defendant's parents, the court noted the youth officer was present to make sure defendant, who was a juvenile, would be accorded his rights; that there was no evidence defendant was ever mistreated by the police officers; that the evidence showed the officers advised defendant of his constitutional rights; and that defendant was treated fairly. The court allowed the confession to be admitted into evidence.

■■ We find that the police had probable cause to believe that defendant had committed the crimes of burglary and murder. Police Officer Nealis had visited the scene of the murder that had occurred only two days earlier. Anderson gave a statement that clearly implicated defendant. However, the officer was not relying only on the statement of Anderson since his own investigation corroborated the details provided by Anderson, which Anderson alleged had been given to him by defendant. Anderson's statements could be considered trustworthy since they were against his interests. These statements displayed Anderson's guilty knowledge that he could have obtained because he was present himself, as defendant later claimed in his confession; or Anderson might have received this information from someone who had been present. Under these circumstances, we believe that the information known to the investigating officer was sufficient to establish probable cause that defendant had committed or was responsible for the murder and burglary two days earlier at the victim's home. Compare *People v. McKee* (1968), 39 Ill. 2d 265, 235 N.E.2d 625; *People v. Sims* (1978), 58 Ill. App. 3d 668, 374 N.E.2d 1050.

But defendant now argues that, even if probable cause existed, his

arrest at his home without an arrest warrant was improper. While this case was pending on appeal, the United States Supreme Court decided two appeals in *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371. *Payton* holds that the fourth amendment to the Federal Constitution requires that police obtain a warrant to enter a suspect's home to arrest him. The Supreme Court did not consider the argument of what it termed an "arguable" proposition, that a warrantless entry might be justified by exigent circumstances, but it commented:

> "Finally, in both cases we are dealing with entries into homes made without the consent of an occupant. In *Payton*, the police used crowbars to break down the door and in *Riddick*, although his three-year-old son answered the door, the police entered before Riddick had an opportunity either to object or to consent." 445 U.S. 573, 583, 63 L. Ed. 2d 639, 649, 100 S. Ct. 1371, 1378.

■■ In *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543, the Illinois Supreme Court held that the Illinois arrest statute (Ill. Rev. Stat. 1977, ch. 38, pars. 107—1 to 107—14) is consistent with *Payton v. New York*, and that statute does not allow warrantless entries to arrest, except when there are "exigent circumstances."[1] Thus, under the Illinois statute, as authoritatively construed in *Abney*, a warrantless entry into a person's home for purposes of arrest is reasonable only if there is probable cause and if exigent circumstances justify the warrantless entry to arrest. Each case, however, is to be decided on its own facts.

■■ Exigent circumstances may be found here based on the guidelines set forth in *Abney*. Defendant was arrested shortly before 9 a.m. on July 16 within, at most, a few hours of Anderson's statements to police implicating him in the murder of a 75-year-old woman which had taken place on the evening of July 14. Our supreme court in *Abney* noted that the police had an unusual opportunity to quickly apprehend a possibly armed and dangerous subject and thereby prevent his escape, avoid exhaustion of law enforcement resources and help insure against further endangerment to the community in holding that the warrantless arrest was proper. In this case the probable cause for defendant's arrest was strong, the crime was recently committed and was very violent in nature, and the officers did not contemplate their course of conduct for an extended period of time. Further, the arrest was peaceful. We conclude their actions were reason-

---

[1] The United States Supreme Court has not yet decided if the Federal constitutional principle therein set forth will be given retroactive application. (See *Williams v. United States* (1971), 401 U.S. 646, 653, 28 L. Ed. 2d 388, 395, 91 S. Ct. 1148, 1152; *United States v. Peltier* (1975), 422 U.S. 531, 535, 45 L. Ed. 2d 374, 379-80, 95 S. Ct. 2313, 2316; *Brown v. Louisiana* (1980), __ U.S. __, 65 L. Ed. 2d 159, 100 S. Ct. 2214.) However, the decision in *Abney* renders *Payton* applicable to the present case.

able in light of all the circumstances presented. See also *People v. Sakalas* (1980), 85 Ill. App. 3d 59.

We also consider the present circumstances to be distinguishable from those in *Payton v. New York*, since defendant did not establish a nonconsensual police entry. There is no evidence in the case at bar that the police ever entered the premises, or that defendant or his mother or any other person objected. (But *cf. People v. Montgomery* (1980), 84 Ill. App. 3d 695, 405 N.E.2d 1275.) Rather the evidence indicates that when the police arrived and announced their purpose to take defendant into custody, defendant was summoned, dressed, and voluntarily submitted to custody. Although this constitutes an arrest for all practical purposes (*People v. Wipfler* (1978), 68 Ill. 2d 158, 368 N.E.2d 870), it is unlike the situation in *Payton v. New York* where the police officers made an actual and forcible entry in one instance in order to effect the arrest and entered in the other before an objection could be voiced.

Here, the police did not force their way in or invade defendant's home over his objection or that of any other resident of the premises. Rather, the facts here indicate that defendant without protest voluntarily accompanied the police to the station. Therefore, *Payton v. New York* does not apply to the situation before us and does not require reversal under the circumstances here. See *People v. Sakalas*.

Defendant next contends that since he was deprived of a parent's advice during his interrogation, his statement should not have been admitted. Defendant recognizes that the law in Illinois, at present, does not support his argument (*In re Stiff* (1975), 32 Ill. App. 3d 971, 336 N.E.2d 619), but contends that this court should adopt a rule excluding evidence obtained in derogation of section 3—2 of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 703—2). Defendant cites decisions from other jurisdictions such as *Lewis v. State* (1972), 259 Ind. 431, 288 N.E.2d 138, which support this claim.

■■ The Illinois courts have recognized that it is preferable that the parents of a juvenile be present during questioning (*In re Bertrand* (1978), 65 Ill. App. 3d 703, 705, 382 N.E.2d 660), but have held that the absence of an accused juvenile's parents or guardian during questioning does not render ineffective an otherwise valid waiver of constitutional rights; rather, the fact that there has been a violation of section 3—2 of the Juvenile Court Act, and a failure to notify the juvenile's parents, resulting in their absence during questioning of the juvenile, has been stated to be at most "a factor in determining whether subsequent statements were voluntarily made." (*People v. Creach* (1979), 69 Ill. App. 3d 874, 890, 387 N.E.2d 762, *aff'd in part, rev'd in part on other grounds* (1980), 79 Ill. 2d 96, 402 N.E.2d 228.) We note that no claim has been made that defendant's confession was in

fact involuntary. Under the circumstances, the absence of defendant's parents during his questioning by police did not render his confession inadmissible. See *People v. Prude* (1977), 66 Ill. 2d 470, 363 N.E.2d 371; *In re Lamb* (1975), 61 Ill. 2d 383, 336 N.E.2d 753.

Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

JIGANTI and ROMITI, JJ., concur.