THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MARK CLEMENTS, Defendant-Appellant.

First District (1st Division)   No. 82—2523

Opinion filed August 26, 1985.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Robert Alvarado, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

After a jury trial, defendant Mark Clements was found guilty of murder and aggravated arson. He received concurrent sentences of natural life for murder and 30 years for aggravated arson. On appeal, defendant contends: (1) the Juvenile Court Act prohibited the admission of his confession; (2) his arrest was made without probable cause and his confession therefore should have been suppressed; (3)

the State failed to prove that defendant waived his *Miranda* rights; (4) he was denied his right to confront witnesses and his right to a fair trial where the State elicited hearsay testimony and improperly examined witnesses; and (5) the imposition of a natural life sentence was improper.

We affirm.

The evidence presented at trial showed that James Moore, Annabelle Moore, Isadore Tucker and Robert Watson died in a fire which occurred at approximately 2 a.m. on June 17, 1981, in a building located at 6602 South Wentworth in Chicago. The victims resided in second-floor apartments. The cause of death was acute carbon monoxide intoxication. Defendant was charged with murder, aggravated arson and criminal damage to property. He was 16 years old at the time of the offenses and 17 at the time of trial.

Lieutenant Kinsella of the Chicago fire department testified that as he was extinguishing the fire he saw a liquid burning on the porch of the building. He smelled gasoline and saw an empty whiskey bottle near the burning fluid. At the bottom of the stairway he found a soft drink bottle filled with a liquid which looked and smelled like gasoline. Kinsella gave both bottles to Detective Peterson.

Detective Thomas Peterson testified that tests indicated the bottles contained gasoline. Also, tests conducted on clothing removed from one of the victims revealed the presence of gasoline. Peterson examined the building in which the fire occurred and discovered that the fire began on the front stairway and on the second floor of the back porch. Heavy charring on the stairs indicated that an accelerant had been used. Peterson concluded the fire was caused by arson.

Defendant was arrested on June 25, 1981, by Officer Aaron Gibson. Gibson testified he responded to a disturbance call and saw defendant among those yelling and shouting obscenities. He arrested defendant for disorderly conduct after defendant refused to quiet down. Gibson immediately advised defendant of his *Miranda* rights. After he received additional information about defendant, Gibson transferred defendant to police headquarters.

Detective James Higgins testified he spoke to Derrick Banks, Ramona Patton and James Robinson during his investigation of the arson and homicides in question. He thereafter sought defendant for questioning. On the evening of June 25, 1981, he spoke to defendant at police headquarters. Prior to each of three conversations with defendant, Higgins advised defendant of his rights and informed him that he could be tried as an adult if charged with the crimes.

Defendant stated he understood the warnings. When he first spoke to defendant, defendant said that he, James Robinson and Ken Miner had planned to commit a burglary on the night in question, but did not make it to their destination because their car ran out of gas. The men pushed the car to 66th and Perry streets near their homes. During a subsequent interview, defendant added that after they bought gas, Ken Miner decided to collect money owed him by another man. As they walked to the man's apartment at 66th and Wentworth, Miner told defendant to collect bottles. When they arrived at the apartment, they poured gas into the bottles. Defendant said another person named Jamaica was also with them. Jamaica went upstairs. Defendant brought bottles of gas upstairs and saw Miner and Jamaica beating the man. Miner splashed gas on the man and he and Jamaica poured gas on the stairway as they left the building. Miner ignited the fuel. Aided by a photograph, defendant identified Robert Watson as the man on whom Miner spilled gas.

Assistant State's Attorney Kevin Moore interviewed defendant on June 25, 1981. Before the interview, he advised defendant of his *Miranda* rights and told him he could be tried as an adult. Moore took defendant's written statement and read the statement into the record.

In his statement, defendant acknowledged his rights and stated that he understood them. If charged with the crimes, defendant knew he could be tried as an adult. Defendant stated that on June 17, 1981, he was riding in a car with James Robinson, Ken Miner and Jamaica. The car ran out of gas and was pushed to the intersection of 66th and Perry streets near defendant's home. While the others went to buy gasoline, defendant collected bottles as Miner instructed him to do. Defendant collected a Coca-Cola bottle and a wine bottle. The men then walked to 66th and Wentworth and, while outside the apartment building, filled the bottles with gas. They went to a second-floor apartment to talk to a man who sold marijuana for Ken, and an argument ensued. Defendant brought the bottles of gas upstairs. Ken and Jamaica poured gas on the man's pants and splashed gas on the stairway as they left the building. Ken Miner lit the match which started the fire. Immediately thereafter, the four men ran to defendant's house.

Defense witness James Robinson testified he had known defendant for five years. Robinson was arrested on the afternoon of June 25, 1981, and was beaten by police while he was in an interrogation room. He saw defendant later that evening and heard police shouting at defendant. Robinson and defendant were placed in a room to-

gether at approximately 12 a.m. Defendant cried and rocked in his chair. His face was red and "puffy." Robinson was released from police custody at 5 p.m. on June 26, 1981.

Dr. Allen K. Rosenwald, a psychologist, also testified on defendant's behalf. Rosenwald administered five tests to defendant and determined that defendant had an I.Q. of 58 and suffered mild mental retardation. He also found that defendant had a passive dependent personality. Rosenwald explained that a person with such a personality is easily led and "suggestable" and takes no initiative. A passive dependent person reacts to stress by being compliant and by yielding to that which creates stress. On cross-examination, Rosenwald testified that he examined defendant to determine his fitness to stand trial and concluded that defendant understood the nature of the proceedings. Although defendant understood the meaning of the phrase, "You have the right to remain silent," he did not believe that defendant understood *Miranda* rights.

Defendant testified that he did not complete grade school. He attended GED classes but never received a diploma. When he was taken to police headquarters after his arrest, defendant was interviewed by Higgins and Daniel McWeeny and denied committing the offense. He was beaten and slapped by police and finally confessed because he was afraid of being beaten again. When he first spoke to Assistant State's Attorney Moore, he denied involvement in the crimes. However, he lied when he gave his statement to Moore because he was afraid the police would harm him. The police told defendant exactly what to say to Moore. Defendant could not recall where he was at the time of the fire. Defendant recalled explaining *Miranda* rights to Dr. Albert Stipes, a psychiatrist, during an examination.

On rebuttal, Higgins testified he spoke to Robinson about the fire. Robinson stated that prior thereto he and defendant planned to commit a burglary. At about the time the fire started, Robinson was at defendant's home and saw defendant run into the house.

Dr. Albert Stipes testified he examined defendant on October 6, 1981, and June 4, 1982. He concluded that defendant was of low to average intelligence.

■■ Defendant first contends section 2—9(1) of the Juvenile Court Act prohibited the introduction of his statement. The statute on which defendant relies provided:

"No adjudication, disposition or evidence given in proceedings under this Act is admissible as evidence against the minor for any purpose whatever in any civil, criminal or other cause or

proceeding except in subsequent proceedings under this Act concerning the same minor." Ill. Rev. Stat. 1981, ch. 37, par. 702—9(1).

In *People v. Richeson* (1962), 24 Ill. 2d 182, 181 N.E.2d 170, the court interpreted a similar provision of the Family Court Act as meaning that only evidence given during or obtained as a result of a proceeding under the Family Court Act was subject to exclusion. The court then held that evidence of defendant's commitment to a reformatory was admissible. In the case at bar, defendant's statement was not obtained as a result of juvenile court proceedings. Instead, it was obtained by law enforcement personnel prior to any juvenile proceedings and existed independently from such proceedings. Thus, section 2—9(1) of the Juvenile Court Act did not bar the admission of the confession, and we find no error in its admission.

■ Second, defendant contends his confession should have been suppressed because it resulted from an arrest made without probable cause. He specifically maintains that neither his arrest for disorderly conduct nor his detention for questioning regarding the arson and murders was based on probable cause.

During the hearing on the motion to quash defendant's arrest, defense counsel stated that the only issue he was raising was whether defendant's detention for questioning for murder and arson was illegal. Counsel did not ask the trial court to decide whether probable cause existed for the disorderly conduct arrest. By failing to raise the issue in the trial court, defendant has waived the right to present the issue on appeal. *People v. Holloway* (1981), 86 Ill. 2d 78, 426 N.E.2d 871.

■ We further find that defendant's subsequent detention for questioning about the murders and arson was based on probable cause. Probable cause to arrest exists when facts and circumstances would cause a reasonable man to believe that an offense had been committed and that defendant had committed the offense. (*People v. Creach* (1980), 79 Ill. 2d 96, 402 N.E.2d 228.) The evidence presented in the trial court showed that prior to defendant's arrest Robinson told police that he, defendant and Ken Miner were riding in Miner's car on the night of the fire and Miner's car ran out of gas. The car was gray and white. They pushed the car to 6602 South Perry. Defendant was last seen walking towards 66th and Wentworth. Also, police knew that Derrick Banks had seen someone he recognized from the neighborhood collecting bottles which he placed in a gray or white car. Bottles containing gasoline were found at the fire. Also, defendant was seen running into the basement at

6602 South Perry shortly after the fire started. Based on these facts, police could reasonably conclude that defendant was involved in the crime.

■ Third, defendant contends the trial court erred in denying his motion to suppress his confession. He alleges three grounds for suppression: (1) police failed to notify his parents as required by section 3—2(1) of the Juvenile Court Act; (2) his confession was involuntary because he was only 16 years old, retarded and incapable of understanding his rights; and (3) the confession was obtained through coercion.

Initially, we note that failure to notify defendant's parents and the parents' absence during questioning do not automatically render a juvenile's confession inadmissible. Rather, violation of the statute is a factor to be considered in determining the voluntariness of the confession. (*People v. Haynes* (1980), 89 Ill. App. 3d 231, 411 N.E.2d 876; *In re Stiff* (1975), 32 Ill. App. 3d 971, 336 N.E.2d 619.) Here, the record shows that defendant resided with a guardian and that no one had been contacted before the interrogation. While this fact does not require suppression, we will consider it in deciding the following issue on voluntariness.

Voluntariness is determined by considering the totality of circumstances. (*People v. Prude* (1977), 66 Ill. 2d 470, 363 N.E.2d 371, *cert. denied* (1977), 434 U.S. 930, 54 L. Ed. 2d 291, 98 S. Ct. 418.) Included in the factors which should be considered are a defendant's age and mental capacity and special care must be taken in deciding the voluntariness of a minor's confession. *People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870.

■ The record discloses that each police officer and the assistant State's Attorney advised defendant of his rights prior to each interview. He was also advised of the possibility of being tried as an adult. Each witness testified that he did not observe any unusual physical or personality traits. They also stated that defendant responded intelligently to the questions asked. The trial court stated that it considered these factors with Dr. Rosenwald's findings regarding defendant's below average I.Q. After carefully reviewing the facts, the court found that the questions asked and the rights of which defendant was advised were not so complicated or unintelligible that defendant could not understand them. The court concluded that defendant's confession was voluntary. Even though defendant's guardian was not present, we believe there was sufficient evidence supporting the trial court's finding. The trial court's decision should not be reversed unless it is against the manifest weight of the evi-

dence. (*People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870; *People v. Prude* (1977), 66 Ill. 2d 470, 363 N.E.2d 371, *cert. denied* (1977), 434 U.S. 930, 54 L. Ed. 2d 291, 98 S. Ct. 418.) The record in this case shows the trial court carefully considered this issue, and we find no reason to disturb its ruling.

■ Defendant further argues that the State failed to rebut his trial testimony that his confession was coerced. He maintains that his confession should therefore be suppressed. In deciding this issue, we may also consider testimony presented at trial, even though a pretrial hearing was held. *People v. Wade* (1979), 71 Ill. App. 3d 1013, 389 N.E.2d 1230.

At the pretrial hearing, Higgins testified that defendant was not physically or mentally coerced and, at trial, Assistant State's Attorney Moore testified that defendant did not complain of any mistreatment. In his statement, defendant said police treated him well. Furthermore, in ruling on this issue, the trial court considered a photo of defendant taken approximately at the time he gave his statement to Moore. The court specifically observed that the picture revealed no bruises or other evidence of physical abuse and stated that it found the defense theory incredible. It is the duty of the trial court to resolve conflicts in evidence and determine the credibility of witnesses. (*People v. Underwood* (1982), 108 Ill. App. 3d 846, 439 N.E.2d 1080.) Having reviewed the entire record, we find that the decision of the court was not against the manifest weight of the evidence. *People v. Hernandez* (1982), 105 Ill. App. 3d 501, 434 N.E.2d 532.

Fourth, defendant contends the trial court permitted the introduction of hearsay testimony thereby denying him his right to confront witnesses.

■ Defendant complains of Higgins' testimony that he spoke to Derrick Banks, Ramona Patton and James Robinson on the morning of June 25, 1981, and was thereafter looking for defendant. Defendant also alleges that it was error for Higgins to testify that before defendant confessed he told him of the conversation with Robinson. However, we find no error in the admission of this evidence. Higgins did not testify to the substance of his conversations, but only to the fact that the conversations occurred. Such testimony was not hearsay. (*People v. Jones* (1983), 114 Ill. App. 3d 576, 449 N.E.2d 547; *People v. Jackson* (1979), 72 Ill. App. 3d 231, 390 N.E.2d 47.) Furthermore, the evidence was properly introduced by the State to explain why police conducted their investigation as they did and why police arrested defendant.

■ Defendant further alleges he was prejudiced by Higgins' testimony that defendant admitted committing the offenses after Higgins told him that someone in the neighborhood had identified defendant in a photo. Higgins later testified that person was Derrick Banks. We agree with defendant that the evidence implied that defendant was the perpetrator of the offense and should not have been admitted because defendant was not given the opportunity to test the veracity of the identification through cross-examination of Banks. (*People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223; *People v. Bolden* (1978), 59 Ill. App. 3d 441, 375 N.E.2d 898.) However, the error does not require reversal because defendant's confession was properly admitted into evidence and, along with the other evidence presented, provided overwhelming evidence of his guilt. *People v. Bryant* (1983), 94 Ill. 2d 514, 447 N.E.2d 301.

Defendant also contends the State improperly cross-examined James Robinson regarding the substance of his conversation with Detective Higgins. Assuming that the cross-examination was improper, such error was harmless in light of the evidence of defendant's guilt. *People v. Bryant* (1983), 94 Ill. 2d 514, 447 N.E.2d 301.

■ Finally, defendant contends the trial court violated due process in imposing on a minor a natural life sentence for murder. He further contends that because the death penalty is prohibited for those under 18 years (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(b)) and an extended term cannot be imposed on one who was under 17 at the time the crime was committed, the natural life sentence violated the legislative intent that no enhanced penalties be imposed on minors.

Generally, the legislature has wide discretion to prescribe penalties for offenses. (*People v. Bradley* (1980), 79 Ill. 2d 410, 403 N.E.2d 1029.) Due process is satisfied if the statute in question is reasonably designed to remedy the evils which the legislature has determined to be a threat to public safety and welfare. (*People v. Mathey* (1983), 99 Ill. 2d 292, 458 N.E.2d 499.) Defendant was sentenced under section 5—8—1(a)(1)(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(c)), which provides that "if the defendant *** is found guilty of murdering more than one victim, the court shall sentence defendant to a term of natural life imprisonment." In *People v. Taylor* (1984), 102 Ill. 2d 201, 464 N.E.2d 1059, the court found that the legislature considered the serious nature of the offense of multiple murders in determining that in the public interest there must be a mandatory minimum sentence of natural life imprisonment. We find that the public

interest and welfare in sentencing a multiple murderer to life imprisonment is a reasonable and legitimate basis for such sentence.

Furthermore, we are not persuaded by defendant's argument regarding legislative intent to preclude enhanced penalties for minors. If the legislature had such intent, it would have placed an age limitation on the sentence as it did in the other statutes on which defendant relies. Finally, Illinois courts have upheld life sentences for minors. See *People v. Taylor* (1984), 102 Ill. 2d 201, 464 N.E.2d 1059; *People v. Darnell* (1981), 94 Ill. App. 3d 830, 419 N.E.2d 384.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McGLOON and O'CONNOR, JJ., concur.